Next case on this morning's docket It is people of the state of Illinois v. Jason Engelhart We have Mr. Larry Wells for Dick Collins And we have Patrick Bailey for Daph Lee And when you are ready to proceed Mr. Wells you may do so May it please the court, counsel My name is Larry Wells, I represent the defendant Mr. Engelhart in this court The two most serious crimes Mr. Engelhart was a victim of involved the manufacture of methamphetamine Consequently, while Mr. Engelhart raises several issues before this court Unless there are any questions, I am going to confine my presentation today to the issue of how Mr. Engelhart was denied a fair trial on those two charges There were two main witnesses against Mr. Engelhart Jeffrey Johnsties and Johnsties' girlfriend Kimberly Black The meth lab was found on their property They were caught by the police They turned state's evidence and testified against Mr. Engelhart Without these two witnesses they didn't have a case Johnsties was charged with seven crimes, six of them were felonies He pled guilty to two crimes and the rest were dismissed The four felonies that were dismissed as part of his guilty plea deal were Count one, methamphetamine manufacturing, a class one felony That was dismissed as part of the guilty plea deal Count four, possession of antivirus ammonia with the intention to manufacture methamphetamine, a class one felony That was dismissed as part of the guilty plea deal Count five, use of property to manufacture methamphetamine, a class two felony That was dismissed as part of the guilty plea deal Count six, unlawful possession of methamphetamine manufacturing material with the intention to manufacture methamphetamine, a class two felony That was dismissed as part of the guilty plea deal Johnsties had four serious felonies dismissed in return for his guilty plea The other witness, Black, pled guilty to a felony and received probation The jury, in Mr. Englehart's case, never learned these critical impeaching facts The jury never learned that Black got probation The jury never learned that Black was on probation at the time he testified The jury never learned that the convictions weren't put in for impeachment even That's correct The jury never learned that part of the, I'm sorry Well, the jury was not aware of the convictions at all? Oh, no, I'm sorry I mean, your argument in your brief is about a plea deal Yes, that's right Okay, but was the jury aware that they'd been convicted of these felonies? Yes, yes, I'm sorry, I misunderstood Okay, okay The jury never learned that Black was on probation Never learned that she received a probation as part of the guilty plea deal And did not learn that four felonies were dismissed as part of Joste's guilty plea deal What's worse, the prosecutor in this case misled the jury by his examination of the investigating officer The prosecutor had the officer testify that the officer never made any deals with Joste's or Black And had no charges dismissed Well, of course the officer didn't have any charges dismissed The officer didn't have authority to dismiss charges The officer didn't have the charges brought either, he couldn't file charges When the prosecutor had the officer testify that no charges were dismissed The prosecutor himself knew that the four felonies were dismissed The prosecutor himself knew that this witness had received probation Because the prosecutor was the same person who made these guilty plea deals He knew there were guilty plea deals Your argument is about a deal to testify against your client, though No, not necessarily The important part of this is that the jury be aware of the guilty plea deal So they can observe the witness So they can decide for themselves whether there is a motive to falsify The state in it suggests that somehow there has to be a quid pro quo here The case law is very, very clear on that I mean, if that was the deal, they would just present a piece of paper There's no deal And rats, you almost thought we had them there But they say there's no deal, so we cannot No, that's not what the rule is The rule is the extent of the guilty plea deal has to be made known The defendant cannot have a reliable verdict Unless the jury knows the extent of the guilty plea deal There's no requirement to establish that there's a quid pro quo All you have to do is make sure that the jury knows that there's this impeaching material And they can see the witness confronted with the deal So the jury can tell whether this witness has the motive I'm just reading from your issue 2 It says Mr. Englehart received ineffective assistance of counsel because his attorney A Failed to use easily accessible public information to impeach the witness Jeffrey Justis About a possible plea deal in exchange for his testimony Certainly, naturally My question then is, is there anything in the record that shows there was a deal made in exchange for his testimony? No, I don't believe there's anything that shows there's a deal in exchange for testimony And I don't believe that that's what that heading means I think that heading means there's a right to inquire And whether the witness denies it or admits it is for the jury to look at and weigh And that's what the case law talks about The defense attorney is entitled to say, now, you got a deal here You had four serious felonies dismissed And you understood what that was about, didn't you? That was so you could turn to state's evidence and gain defense That isn't that part of the deal? No, that wasn't it I'm a good citizen, I want to stand up and I want to testify and tell the truth Well, the jury gets to watch that and decide And if they don't see that happen, the result's not reliable That's what the case law talks about The due process right of the defendant to confront these witnesses with the guilty plea deal The state can say there was no deal But it's not a question of whether there was a quid pro quo deal in return for testimony The plain fact is there was a guilty plea deal He pled guilty and there was a deal He pled guilty and there were charges dismissed That other witness was on probation That was a guilty plea deal And the jury was misled about that And they had that officer testify about him not dismissing charges They knew he couldn't dismiss charges, they were misleading the jury Defense counsel was ineffective for failing to find out about this And confront the witness with this But it's not important that this court decide who's at fault Was defense counsel ineffective for failing to investigate? Or was the prosecutor engaged in misconduct by failing to reveal? Or perhaps the prosecutor did reveal this Defense counsel knew all about it But he ineffectively failed to confront the witness with the information he already had We know the prosecutor misled the jury, failed to correct the jury With his misleading information about there being no deal None of that really makes any difference We cite the Kerrigan case in our brief For the proposition that this court doesn't have to pick somebody to blame here It doesn't matter There's a due process The central point is that there's a due process violation Where these witnesses, the two crucial witnesses that caused the defendant to be convicted They were not confronted with their guilty plea deals And that due process violation renders the decision of the jury unreliable They were not confronted This court does not have to decide who's to blame It's enough to know that there were guilty plea deals The jury never learned about them And they were crucial witnesses And because of that, we ask this court to reverse the conviction And revamp this case to a new trial Thank you, at Guilfath the opportunity for a rebuttal, Mr. Wells And Ms. Paul Bailey Good morning, Your Honor Good morning And counsel A couple of preliminary matters First of all, the state has in the original brief Requested a motion to strike In the reply brief, the defendant supplied the appendix copies of Appears to be court records that were subject to the motion to strike I don't know if there was ever a formal request to take additional notice of that To the extent that makes a difference Now I have no objection As part of this case The second thing On the heels of that When counsel did the recitation of the particular charges And the terms that were dismissed There was a representation of Count Long As a manufacturer of methamphetamine In fact, as I look at the appendix Count Long is actually in possession of methamphetamine Which is a class 3 felony, not the class 1 manufacturer Which makes a little bit of a difference in terms of how that argument is presented So I just want to get that clear Unless there's something I'm missing I'm just going off what's on the appendix material So just to make sure I understand You've withdrawn your motion to strike That's right, yes It's smooth Okay There's sort of two considerations at play here We have a question of whether counsel is ineffective For not impeaching Mr. Jostice with the plea deal And the second thing is whether the prosecutor committed misconduct By not... Well, it's really sort of two parts to that as well Whether or not disclosing it Or has defendant argued misled the jury About the nature or the fact of this plea deal I want to go ahead and start with the latter issue first Defendant argues that the case law is abundantly clear That there's some duty on the part of the prosecutor To, at a trial, disclose all the elements of the plea deal And in that regard, as I look at the cases in the defendant's reply brief There's sort of two categories of cases One, which discusses a jury's entitlement to hear about The elements of a plea deal But that's part of the impeachment process In other words, that he cannot restrict a cross-examination of an individual In order to expose potential bias And I have no problem with that To the extent that the defendant is arguing that the state thinks that that's not appropriate That's not my argument whatsoever The second case that the defendant cites Is a case called People v. Junior A curious case to be cited for the proposition That there's no necessity for a quid pro quo Because that's all that People v. Junior was about The state's witness in that case Had entered into an explicit plea deal In exchange for his testimony against a co-defendant And in return for the exchange of that He was going to get concurrent rather than consecutive sentences When time came for trial That particular witness was examined by the state And cross-examined by the defense counsel In both instances, the state did not correct the misrepresentation There was no deal for his testimony And the defense counsel cross-examined And denied it to the defense counsel That there was anything done in exchange for his testimony And the court had held justifiably That it has essentially perjured testimony And the prosecutor had the right, or excuse me, the duty To correct false testimony And that's very true But that's not what we have in this case Because what we have is the testimony of Mr. Johnson That he was testifying just as a matter of testifying The defendant's included in the appendix The actual plea deal And in that plea deal there was nothing stated At the time of the deal that this was being done In exchange for Mr. Johnson's cooperation or testimony In any other case And that's a very common occurrence That that type of deal is done, I've done it myself And that becomes a very highly impeachable thing But in the absence of it, it only just becomes An ordinary plea deal in any other case And the guy's sitting in jail I also want to make one further mention about this plea deal He also pled guilty to two of the seven counts In his charge, he also pled guilty to a third case Which stemmed more or less from the same transaction That one of the defendants pulled over for Driving a license that was revoked And he also pled guilty to that So when you look at the plea deal itself Which is in part of the appendix You'll see really the full nature And the considerations of that plea deal Now, the defendant is arguing That the prosecutor Misrepresented things to the jury With regards to the plea deal itself The misrepresentation comes in the form of this According to the defendant The defendant had the sheriff's deputy Who interviewed Mr. Jostice Get on the witness stand And during the examination of things That were testified to by him About his speaking with Jostice He was asked whether when Jostice gave up information That was going to implicate the defendant Whether there were any deals made Any sort of promises made, things of that nature To which Justice said no Then, according to the defendant It becomes really, that's a false representation Because then later on, he gets a deal I guess I fail to see the connect between the two And I think that first of all When we look at what, well, I'll put it this way I think that what appears to be a rather innocent line of questioning Is being transformed by the defendant To something far more sinister And not justifiably so Every prosecutor has had lots of cases That deal with suppression of evidence The first thing that a prosecutor is always going to ask A cop that's interviewing a defendant Did you, in exchange, offer him or promise him Or make offers of leniency Or make a deal, etc., etc. Because those are, of course, things that play significantly Into consideration of whether there was a Voluntariness to the statements being made So, rather than I believe that the prosecutor Is trying to misrepresent something I think what the prosecutor is trying to do Is to show that Justice's cooperation Was his cooperation And it wasn't motivated By some promise that was being given to him in exchange Which, of course, would impeach, obviously, the veracity Of that particular information That's being offered to the police officer I want to talk a little bit about the plea deal Because there's a lot of talk about Well, we've got two of seven charges We've pled guilty to And, you know, this is The defendant repeatedly refers to this In the course of the briefs As this favorable deal This good deal This great deal I don't know what's a good deal And what is not a good deal I know it's a deal And when I read good deal I immediately make the assumption that it's a good deal Because you got something In exchange for something That you probably wouldn't have gotten otherwise Much like we have in this junior case Where the defendant managed to secure In exchange for his testimony A concurrent rather than consecutive sentence But let's look at the charges that the defendant Excuse me, Justice, pled guilty to Now, he pled guilty to two offenses A class one offense called Participation in the manufacture of methamphetamine He pled guilty to I believe it was a class three Unlawful use of weapons charge Now, in exchange for those two convictions The defendant Excuse me, I keep saying the defendant Mr. Justice Charges for possession of methamphetamine Which is a class three A class A possession of drug paraphernalia A class one possession of anhydrous With intent to manufacture And a class two allowing The use of property from meth manufacture And then a final count Unlawful possession of meth manufacturing material A rotodrain I think it's what's referred to Let's go through those Rather quickly Now, the class A is a throwaway charge Because he's looking at serious felonies here So we can almost sort of take that out of the equation As being a favorable plea deal He pled guilty to a class one And the only other offense of equal class Is possession of anhydrous ammonia With intent to manufacture I want to lump that in here With allowing the property to use Allowing to use the property for meth manufacture And unlawful possession of meth manufacturing material At least with respect to the anhydrous And the possession of methamphetamine Manufacturing material These are essentially factual components Of the very charge Which the defendant pled guilty to And so arguably enough They're going to get tossed on a one act one crime issue anyway So now we've eliminated those charges Three of those Three of those are now not really out the door And I think you can probably argue That allowing the use of property to manufacture methamphetamine Also falls under the ambit of a one act one crime So now we're essentially down to Possession or participation Of meth manufacture And possession of methamphetamine And all of a sudden now it's been characterized As two out of seven on this fantastic plea deal Which isn't quite so interesting And I think that I made that point Because it also segues into the issue Of whether counsel is ineffective For not cross examining Mr. Jostice About this plea deal As I stated in the beginning I can fully concede That counsel had the The right To cross examine him about the plea deal Because the defendant has the right To explore Potential biases Now we do know that Jostice has insisted That he just pled guilty Because he wanted to plead guilty Obviously the bias here would have to come In the form of essentially That there was a deal made in exchange for his testimony Because he pled guilty Long before this trial took place So it wasn't a matter of him Anticipating giving testimony And then giving a later great deal As a result of it And as I stated before There's nothing in this record to show that that sort of Good pro quo took place If I can just finish up here So I've lost my train of thought Your Honor I think in summary very quickly The prosecutor Had no independent duty To present these things The defendant had the right to cross examine As I just explained If they do so the state would also have I think the right to show That it wasn't such a sweetheart deal after all And therefore the defendant Suffered no prejudice as a result Thank you Thank you Thank you Mr. Wells Rebuttal I believe the state has conceded the only important point here They concede that the defense had the right To cross examine The witnesses on these crucial matters As far as The necessary being a quick pro quo Or distinguishing some of the cases We point to page 17 Of the reply brief This is from the Flowers case A defendant need not show Interest or motive in that any Promises of leniency have in fact Been made to the witness by the state Or that any expectation Of favorable exists in the mind Of the witness before cross examining The witness as to that possible bias So it's very clear that You don't have to establish a quick pro quo You're entitled to inquire About that, that's a right To inquire about that And then the state then Falls back to the position the state Makes there, well this Wasn't a very favorable guilty plea deal That's not for the state to decide Here, that was a jury Question, that was for the jury to decide The state admits that serious Felonies were dismissed The state doesn't make any argument About the other witness Being on probation at the time That the witness testified And this was for this part of the defendant's Right to a trial by jury And we cite plenty Of cases where counsel's ineffective For failing to impeach the witness With the only thing that's there for impeachment And that's what we have here We have these witnesses impeached With their Being caught red handed with the goods The natural inclination to point To somebody else and say he did it, not me And then they make a guilty plea deal And the jury doesn't find out about it And then once more there's this implication In the testimony of the police officer That there was no deal I pointed that In particular that In that testimony the officer Is asked about the later Guilty plea What's that for? That ties up To the officer's testimony that there's no deal So this jury was definitely misled It was never clarified Counsel was ineffective, prosecutor should have Corrected that, doesn't matter Who's at fault The verdict's not reliable So unless there are questions I don't think so Thank you Mr. Wells Thank you Mr. Bailey